IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CALEB HURLEY, through his guardian ad litem
JILL LANE,

                    CV-08-1365-ST

                    Plaintiff,

        v.                          FINDINGS AND
                                    RECOMMENDATIONS
HORIZON PROJECT, INC., et al.,

                    Defendants,

JACKSON COUNTY, MEGAN DANIELS,
UMATILLA COUNTY, RICHARD GARDUNO,
and DENNIS DAHLEN,

                    Third-Party Plaintiffs,

    v.

STATE OF OREGON, LAURIE LINDBERG, JIM
RANSOM, and JANE AND JOHN DOE,

                    Third-Party Defendants.

STEWART, Magistrate Judge:

Plaintiff, Caleb Hurley, is mentally handicapped and dependent on the state to care for him.  He brings this lawsuit through his guardian *ad litem* and mother, Jill Lane, to recover for injuries he allegedly suffered while residing in a group home operated by defendant, Horizon Project, Inc.  In addition to the Horizon Project, Inc., he has also sued two of its managers and an employee responsible for his care (collectively "Horizon"), as well as Umatilla County and Jackson County and several employees of those counties who were responsible for his care (collectively "county defendants").  He alleges that defendants have violated his substantive due process rights pursuant to 42 USC § 1983 ("§ 1983") and are liable for common law negligence and intentional infliction of emotional distress ("IIED").

After Hurley filed and served his Amended Complaint on the county defendants, both Umatilla County and Jackson County filed third-party complaints against the State of Oregon ("State") and several of its employees, alleging that their negligence led to Hurley's injuries and claiming a right of contribution pursuant to ORS 31.800(1) for all or some percentage of whatever damages Hurley may be awarded.  They allege Hurley's injures were caused by the State, among other negligent acts, (1) choosing to relicense the Horizon facility despite deficiencies noted by a state employee who inspected the facility a week after Hurley was placed there; (2) failing to require the Horizon facility to correct those deficiencies; and (3) failing to assure that Hurley received adequate care at the Horizon facility.

The State has filed identical motions to dismiss both third-party complaints pursuant to FRCP 12(b)(6) (dockets # 42 & # 45).  First, the State argues that pursuant to the Oregon Tort Claims Act ("OTCA"), claims against state employees operating within the scope of their

employment must be brought against the State, not its employees.  Second, the State argues that,

based on its sovereign immunity under the Eleventh Amendment to the United States

Constitution, all claims against it and its employees must be dismissed.

The county defendants concede that the Eleventh Amendment bars their state law

contribution claims, but maintain that they are still entitled to contribution for the § 1983 claim.

Alternatively, if the court grants the State's motion, they move to dismiss the Amended

Complaint because the State is a necessary and indispensable party to this lawsuit (dockets # 57[1]

& # 61).  Failing that, in the event this case proceeds to trial, they ask the court to permit the

trier-of-fact to assign a percentage of fault to the absent State and reduce any liability assigned to

the county defendants accordingly.

For the reasons that follow, the State's motions to dismiss the third-party complaints

should be GRANTED and the county defendants' motions to dismiss the Amended Complaint

should be DENIED.

///

///

///

///

///

///

///

---

[1]    Umatilla County joins Jackson County's motion and incorporates Jackson County's memorandum in support as its own (docket #57).

3 - FINDINGS AND RECOMMENDATIONS

## FINDINGS

I.    **State's Motions**

    A.    **Contribution under State Law**

The third-party complaints allege two claims for contribution.  The First Claim alleges a right to contribution pursuant to ORS 31.800 against the State on Hurley's negligence claim.[2] As the county defendants concede, this contribution claim is barred by the Eleventh Amendment.

The OTCA requires state-law tort claims asserted against state employees for acts or omissions committed within the scope of their employment or duties to be asserted against the State.  ORS 30.265.  Although a contribution claim itself is not a tort claim, Oregon courts have held that it is a claim arising from potential tort liability because contribution is available only against those who "become jointly or severally liable in tort" for an injury.  *Beaver v. Pelett*, 299 Or, 664, 667 705 P2d 1149, 1150 (1985).  Accordingly, a contribution action must be brought against the State and not its employees.  *Id*.  Thus, the State must be substituted as a defendant *in lieu* of the state employees.  However, under the Eleventh Amendment, the State possesses sovereign immunity from suit against state-law claims asserted in federal court absent its express waiver of that immunity.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 US 89, 100 (1984) ("This Court's decisions thus establish that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state.") (citation, internal quotation marks omitted).  The State has made no express waiver of sovereign immunity in this case, and the OTCA does not waive the State's sovereign immunity.  *See Estate of Pond*

---

[2] The county defendants do not seek contribution with respect to Hurley's IIED claim.  Oregon's comparative fault scheme, of which its contribution statutes are an integral part, does not allow a comparison of fault between intentional tortfeasors.  *See Shin v. Sunriver Preparatory Sch., Inc.*, 199 Or App 352, 376-79, 111 P3d 762, 777-78, *rev denied*, 339 Or 406 (2005).

*v. Oregon*, 322 F Supp2d 1161, 1165 (D Or 2004); *Hudson v. City of Salem*, Civil No. 07-226-ST, 2009 WL 1227770, at *22 (D Or May 1, 2009).  Therefore, substituting the State for its employees as required by the OTCA, prevents this court from adjudicating the First Claim for contribution.

### B.    Contribution under § 1983

The Second Claim in the third-party complaints alleges a right to contribution pursuant to ORS 31.800 against the State on Hurley's § 1983 claim.  Whether this claim is barred by the Eleventh Amendment presents a more difficult issue.

The county defendants allege a right to contribution on Hurley's § 1983 claim based on the State's negligence.  However, any rights or remedies sought pursuant to § 1983 must have their genesis in federal law, not state law.[3]  *See Hepburn ex rel. Hepburn v. Athelas Inst., Inc.*, 324 F Supp2d 752, 756 n1 (D Md 2004) (federal law controls contribution and indemnity claims under § 1983); *Mason v. City of New York,* 949 F Supp 1068, 1079 (1996) (same); *Valdez v. City of Farmington*, 580 F Supp 19, 20 (DNM 1984) (same); *see also* Sheldon Nahmod, 1 *Civil Rights & Civil Liberties Litigation:  The Law of Section 1983* § 4:8, at 4-27 to 4-28 (4th ed 2009) (citing cases for proposition that federal law controls issues of apportionment of damages and contribution under § 1983).

The Ninth Circuit has not yet addressed the issue of whether § 1983 provides a right to contribution.[4]  Most courts that have addressed the issue have held that it does not.  *See Frantz v.*

---

[3]  Whether ORS 31.800 creates a right to contribution for a § 1983 claim in state court is an entirely separate issue that this court need not reach.

[4]  The Ninth Circuit has held that there is no federal right to indemnification under § 1983, a doctrine closely related to contribution.  *See Allen v. City of Los Angeles*, 92 F3d 842, 845 n1 (9th Cir 1996), overruled on other grounds, *Acri v. Varian*

(continued...)

*City of Pontiac*, 432 F Supp2d 717, 721-22 (ED Mich 2006) (no right to contribution under §§ 1981 or 1983); *Katka v. Mills*, 422 F Supp2d 1304, 1310 (ND Ga 2006) (no right to contribution on § 1983 claim); *Hepburn*, 324 F Supp2d at 755-57, 759-60 (same); *Mason*, 949 F Supp at 1079 (same); *Gray v. City of Kansas City*, 603 F Supp 872, 874-75 (D Kan 1985) (same); *Banks v. City of Emeryville*, 109 FRD 535, 539 (ND Cal 1985) (finding no support for assertion that § 1983 provides for a right of contribution or indemnity). *But see Alexander v. Hargrove*, No. CIV 93-5510, 1994 WL 444728, at *4 (ED Pa Aug. 16, 1994) (incorporating state law through § 1988 to allow contribution as a matter of federal common law); *Fishman v. De Meo*, 604 F Supp 873, 877 (ED Pa 1985) (following circuit precedent in allowing contribution under § 1983). In reaching this conclusion, these courts have followed the Supreme Court's analysis in *Northwest Airlines, Inc. v. Transp. Workers Union of Am.*, 451 US 77 (1981), and *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 US 630 (1981).

In *Northwest Airlines*, 451 US at 98-99, a unanimous Court held that there was no right to contribution under the Equal Pay Act or Title VII. The Court instructed that a right to contribution may be created in either of two ways: by statute or through the exercise of judicial power to fashion appropriate remedies, *i.e.*, federal common law. The Court found no express right to contribution in the statutory text and concluded that Congress did not intend to create an implied right as the "comprehensive character of the remedial scheme" created under the statutes "strongly evidence[d] an intent not to authorize additional remedies[,]" and the legislative histories of the acts evidenced no contrary Congressional intent. *Id* at 93-94. The Court also

_____

[4](...continued)
*Assocs., Inc.*, 114 F3d 999 (9th Cir 1997) (*en banc*).

6 - FINDINGS AND RECOMMENDATIONS

considered and rejected a right to contribution in the federal common law, explaining that "[t]he judiciary may not, in the face of such comprehensive legislative schemes, fashion new remedies that might upset carefully considered legislative programs." *Id* at 97.

The Court built on this holding, again with unanimity, in *Texas Industries*, 451 US at 640, 646, by finding no right to contribution for antitrust violations.  As in *Northwest Airlines*, the Court found no basis for a contribution remedy in the text or legislative history of the Sherman Act and Clayton Act.  The court found its authority to create federal common law was limited to two categories of cases:  "those in which a federal rule of decision is necessary to protect uniquely federal interests, and those in which Congress has given the courts the power to develop substantive law."  *Id* at 640 (internal citations and quotation marks omitted).  Applying the second category, the Court found some indication that Congress intended federal courts to shape the confines of the broadly worded statutes.  Even so, comparing the "sweeping language" of the statutes' substantive mandates with their "detailed and specific" remedial provisions, the Court concluded this authority extended only to defining violations of the statute and did not give it the authority to expand on the remedies provided by Congress.  *Id* at 644-46.

*Katka* is illustrative of the analysis followed by courts in applying *Northwest Airlines* and *Texas Industries* to claims for contribution under § 1983.  There the court noted that § 1983 contains no express language creating a right of contribution.  Second, it found no evidence that Congress intended to create an implied right to contribution under § 1983 because there was no support for it in the legislative history and because § 1983 was not enacted to benefit participants in a scheme to deprive an individual of his constitutional rights.  Third, it interpreted *Northwest Airlines* and *Texas Industries* as "strong indications . . . that only under the most narrow and

specific of circumstances could a federal common law right to contribution be found." *Katka*, 422 F Supp2d at 1309. Additionally, it noted that "most cases decided since *Northwest Airlines* have held that there is no right to contribution under § 1983." *Id* at 1308-09.

The court agrees with the majority of courts that § 1983 itself does not create a right to contribution.[5] Section 1983 does not explicitly provide for contribution, and Congress has given no indication that it intended to provide such a remedy implicitly. Indeed, when § 1983 was passed in 1871, "the common law in this country traditionally prohibited contribution among joint tortfeasors in all cases." *Northwest Airlines*, 451 US at 88 n16. Thus, it is highly improbable that Congress considered the issue at all. Finally, in light of *Northwest Airlines*, *Texas Industries* and the policy underlying § 1983, it would be inappropriate to create a right to contribution under federal common law. *Northwest Airlines* and *Texas Industries* both eliminate any possibility of a general federal common law right to contribution.

Arguably, however, a contribution claim under § 1983 could arise due to another provision of the Civil Rights Act, § 1988, which "authorize[s] federal courts, where federal law is unsuited or insufficient 'to furnish suitable remedies [in a civil rights action], to look to principles of the common law, as altered by state law,' so long as such principles are not inconsistent with the Constitution and laws of the United States.'" *Hepburn*, 324 F Supp2d at 757 (alterations in original), quoting *Moor v. County of Alameda*, 411 US 693, 702-03 (1973); *see also Katka*, 422 F Supp2d at 1309-10; *Mason*, 949 F Supp at 1078-79. Accordingly, it has

---

[5] The case cited by county defendants, *Testa v. Winquist*, 451 F Supp 388, 395-96 (DRI 1978), is easily distinguishable. There, the party claimed a right to contribution under state law, not under § 1983, and the third-party defendant did not possess sovereign immunity. The case was decided before *Northwest Airlines* or *Texas Industries* and was based on concepts of ancillary and pendant jurisdiction superceded by 28 USC § 1367. It also did not consider whether incorporating a state law contribution remedy was consistent with the aims of § 1983. *Compare Mullin v. P&R Educ. Servs., Inc.*, 942 F Supp 110, 114-115 (EDNY 1996) (finding that contribution and indemnity claims brought against a state defendant in § 1983 context arose only under state law and therefore were barred by the Eleventh Amendment).

been argued that courts should adopt state law rules governing contribution and apply them in the context of § 1983.

*Katka*, 422 F Supp2d at 1310, rejected this argument because Georgia law would not permit contribution for the intentional tort claims brought by the plaintiffs even if § 1988 permitted it to incorporate the Georgia law on contribution into a civil rights claim.  In contrast, *Mason*, 949 F Supp at 1079, found that, under the circumstances of that case, New York law would permit contribution.  Nevertheless, it declined to incorporate New York law under § 1988 because allowing a contribution claim would be inconsistent with one of § 1983's primary ends, namely, deterrence.  In accord with both *Katka* and *Mason*, *Hepburn*, 324 F Supp2d at 759-60, concluded that Maryland's Contribution Act did not apply to the claims at issue and that, even if it did, contribution would be inconsistent § 1983's "twin goals" of compensation and deterrence. *Id*, citing *Dobson v. D.R. Camden*, 705 F2d 759, 766 (5th Cir 1983), *overruled on other grounds on reh'g*, 725 F2d 1003 (5th Cir 1984).

Assuming for purposes of argument that the lack of contribution renders § 1983 remedies "deficient" and that Oregon law permits a contribution action for § 1983 liability against state actors sued in their individual capacities, the court concludes that incorporating Oregon's contribution framework would conflict with the policies underlying § 1983.  These policies "include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law."  *Robertson v. Wegmann*, 436 US 584, 590-91 (1978).  As noted in *Hepburn*, 324 F Supp2d at 759, "the level of culpability necessary for § 1983 liability reduces the need to equitably distribute damages among tortfeasors[,]" making contribution "ill-suited to § 1983 cases."

9 - FINDINGS AND RECOMMENDATIONS

Contribution is premised on the equitable consideration that it is unfair to hold a single tortfeasor responsible for the entire amount of plaintiff's injuries where the negligence of more than one party contributed to that injury.  However, the county defendants may only be held liable on Hurley's § 1983 claim for acts which demonstrate deliberate indifference and not for mere negligence.  *See Long v. County of L.A.*, 442 F3d 1178, 1186 (9th Cir 2006); *Gibson v. County of Washoe, Nev.*, 290 F3d 1175, 1186 (9th Cir 2002), *cert denied*, 537 US 1106 (2003); *Nicini v. Morra*, 212 F3d 798, 807 (3rd Cir 2000).  Also, the individual county officials are entitled to qualified immunity which protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 US 335, 341 (1986).  Under these standards, the court and fact-finder must make more exacting determinations of culpability, further enhancing the deterrence aim for a § 1983 action.  Allowing a party who has violated another person's civil rights to pass some liability on to another would diminish the deterrent effect of § 1983.  *See Mason*, 949 F Supp at 1079.[6]  Under these circumstances, the equitable considerations supporting contribution are outweighed by the deterrence and compensation aims of § 1983.  Since Oregon's contribution statute is inconsistent with the purposes underlying § 1983, it should not be incorporated to create a right of contribution for the county defendants.

Because neither state nor federal law provide the county defendants with an actionable claim for contribution under the circumstances of this case, the State's motions should be granted and the third-party complaints should be dismissed.

---

[6] Allowing contribution as a separate cause of action against a third-party defendant based on state law may also violate the Supreme Court's admonition that § 1988(a) was not "without more . . . , meant to authorize the wholesale importation into federal law of state causes of action."  *Moor*, 411 US at 703-04, quoted in Martin A. Schwartz, 1B *Section 1983 Litigation: Claims and Defenses* § 16.15[C], at p. 16-250 (4th ed 2003).  Oregon's contribution statute affords a party a separate cause of action for contribution (ORS 31.800(1)) that is not provided by § 1983 and is the sole basis for the county defendants' contribution claim.

## II.    Counties' Motions

### A.    Motion to Join Necessary Party

The county defendants argue that without the State as a third-party defendant, this court cannot accord complete relief among the existing parties and that they will be subjected to multiple lawsuits and inconsistent obligations.  They prefer that this case be sent to state court where all potentially culpable parties are subject to its jurisdiction.[7]  As a result, they contend that, pursuant to FRCP 19(a)(1)(A) & (B), the State is a necessary and indispensable party and move to dismiss the Amended Complaint pursuant to FRCP 12(b)(7).

### 1.    Legal Standards

Subject to narrow exceptions, a plaintiff is ordinarily free to choose whom to sue.  *See* J. Moore et al., 16 *Moore's Federal Practice* § 107.14[2][c] (3d ed 2005) ("*Moore's Federal Practice*") ("In general, the plaintiff is the master of the complaint and has the option of naming only those parties the plaintiff chooses to sue, subject only to the rules of joinder [of] necessary parties.").  Those exceptions are described by FRCP 19, which provides in part:

> (a) **Persons Required to Be Joined if Feasible.**
>
> > (1) **Required Party.** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction *must* be joined as a party if:
> > > (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> > > (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

---

[7]  The State claims that it is not subject to jurisdiction in state court because Hurley did not give it a tort claims notice in compliance with the OTCA.  *Beaver*, 299 Or at 671-72, 705 P2d at 1153; *Mitchell v. Sherwood*, 161 Or App 376, 382-83, 985 P2d 870, 873 (1999).  The county defendants concede this point, but assert that the State instead may have received sufficient actual notice of the claim pursuant to ORS 30.275(6) to satisfy the OTCA.  That dispute need not be decided at this juncture.

11 - FINDINGS AND RECOMMENDATIONS

> (i) as a practical matter impair or impede the
> person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial
> risk of incurring double, multiple, or otherwise
> inconsistent obligations because of the interest.

*Id* (bold in original, emphasis added).

If a person meets one of these tests and is not named as a party to the lawsuit, the court "must order that the person be made a party." FRCP 19(a)(2). However, if it is not "feasible" to join a required (or "necessary") party, FRCP 19(b) requires the court to "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed" by considering several factors:

> (1) the extent to which a judgment rendered in the person's absence might
> prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
> > (A) protective provisions in the judgment;
> > (B) shaping the relief; or
> > (C) other measures;
> (3) whether a judgment rendered in the person's absence would be
> adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were
> dismissed for nonjoinder.

FRCP 19(b).

### 2.    Analysis

Prior to determining whether this action must be dismissed under FRCP 19(b) because the State cannot be joined, the court must first determine whether the State is a necessary party under FRCP 19(a). *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F2d 1030, 1042 (9th Cir), *cert denied*, 464 US 849 (1983). As no party contends that the State is not subject to service of process or that joinder of the State will deprive this court of subject matter jurisdiction over the matter, the issue is whether the State falls within FRCP 19(a)(1)(A) or (B).

12 - FINDINGS AND RECOMMENDATIONS

a.      **FRCP 19(a)(1)(A)**

The State is a necessary party under FRCP 19(a)(1)(A) if this court "cannot accord complete relief among existing parties" without the State's presence in this lawsuit.  "This factor is concerned with consummate rather than partial or hollow relief as to those already parties, and with precluding multiple lawsuits on the same cause of action."  *Northrop Corp.*, 705 F2d at 1043.  "Complete relief" refers to relief "as between the persons already parties, not as between a party and the absent person whose joinder is sought."  3 *Moore's Federal Practice* ¶ 19.07-1[1], at 19-93 to 98 (2nd 1980), quoted in *Eldredge v. Carpenters 46 N. Cal. Counties Joint Apprenticeship & Training Comm.*, 662 F2d 534, 537 (9th Cir 1981); *see also Angst v. Royal Maccabees Life Ins. Co.*, 77 F3d 701, 705 (3rd Cir 1996) ("Completeness [of relief] is determined on the basis of those persons who are already parties, and not as between a party and the absent person whose joinder is sought.").

The county defendants contend that this court cannot accord complete relief in the State's absence because the State is liable for some or all of the injuries Hurley sustained while in the Horizon facility.  Without the State's presence, the county defendants believe they will be left holding the bag, while the State, the more culpable party due to its actual knowledge of the deficiencies at the Horizon facility, escapes scot-free.  They argue that these concerns over their ability to pin the blame on the State are valid considerations under the "complete relief" analysis and compel a finding that the State is a necessary party.

However, "it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit."  *Temple v. Synthes Corp.*, 498 US 5, 7 (1990) (citation omitted).  As reflected in the Advisory Committee's Notes to the 1966 amendment to FRCP 19(a), the rule's "description

[of persons to be joined] is not at variance with the settled authorities holding that a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability.  Joinder of these tortfeasors continues to be regulated by Rule 20[.]" (internal citations omitted).  *See also Union Paving Co. v. Downer Corp.*, 276 F2d 468, 471 (9th Cir 1960) (noting that "it is well established that a joint tort-feasor is not an indispensable party").

In *Temple*, a patient brought an action against a manufacturer of a medical device that was implanted in his spine.  The manufacturer filed a motion to dismiss for failure to join the doctor who performed the implant surgery and the hospital in which the surgery was performed. The district court granted the motion, based on the recognition in *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 US 102, 111 (1968), that one focus of Rule 19 was "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies." *Temple*, 498 US at 6.  The Supreme Court disagreed.  Citing the long-standing rule reflected in the Advisory Committee Notes, and finding nothing to the contrary in the governing state tort law, it held that a joint tortfeasor is not a necessary party to a lawsuit under FRCP 19.  It then held that an inquiry under FRCP 19(b) was unnecessary where the requirements of FRCP 19(a) were not met.  *See also Solis v. Couturier*, No. 2:08-cv-02732-RRB-GGH, 2009 WL 3055207, *2-3 (ED Cal Sept 17, 2009) (following *Temple* to hold that potential joint tortfeasors are permissive and not indispensable parties); *Oculus Innovative Scis., Inc. v. Nofil Corp.*, No. C 06-01686 SI, 2007 WL 205068, *2-3 (ND Cal Jan. 25, 2007) (following *Temple* to deny motion to join or dismiss for failure to join a party who was a joint tortfeasor).

14 - FINDINGS AND RECOMMENDATIONS

In an effort to evade *Temple*, the county defendants argue that the "law on joinder of joint tortfeasors" has no application here because Oregon has abolished joint and several tort liability and now subjects tortfeasors only to several liability.  ORS 31.610(1).  This argument is unpersuasive.  To begin with, there is no indication that Oregon's comparative fault scheme entirely eliminated the concept of joint and several liability in Oregon.  *See Shin*, 199 Or App at 378, 111 P3d at 777 (concluding that "[b]y its terms . . . the several liability requirement [of ORS 31.610(1)] applies only to those parties found to be at 'fault' within the meaning of ORS 31.605" and denying apportionment of liability between an intentional and negligent tortfeasor).  Second, assuming the county defendants are correct, if a third-party with joint and several liability to a defendant is not a necessary party, then *a fortiori* a party who is only severally liable cannot be a necessary party.  Oregon courts give "several liability" the "well-established meaning" of "'[l]iability that is separate and distinct from another's liability, *so that the plaintiff may bring a separate action against one defendant without joining the other liable parties*.'"  *Kerry v. Quicehuatl*, 213 Or App 589, 593-94, 162 P3d 1033, 1036, *rev denied*, 343 Or 690 (2007), quoting *Black's Law Dictionary* 933 (8th ed 2004) (emphasis added).  That the county defendants and the State may be only severally liable in a negligence action does not distinguish the holding in *Temple*.

*Temple* also applies to any liability that may exist under § 1983.  To the extent that Hurley has suffered an indivisible injury, this court may impose joint and several liability consistent with common law principles.  *See Weeks v. Chaboudy*, 984 F2d 185, 188-89 (6th Cir 1993); *Finch v. City of Vernon*, 877 F2d 1497, 1503 (11th Cir 1989).  This brings a § 1983 action squarely within the rule of *Temple*.  To the extent that Hurley's injuries are divisible or

attributable to the actions of specific defendants, this court may instruct the jury to specify damages accordingly.  The State's presence is not required in either scenario, and if it is responsible for some of those damages, Hurley simply will not recover.  In both scenarios, however, Hurley and the county defendants will have been accorded complete relief on Hurley's § 1983 claim.

Finally even in the absence of controlling authority, this court finds that it is capable of according the county defendants complete relief in this action.  The county defendants remain free to contend that Hurley's injuries were caused by the State's actions.  They may subpoena state witnesses and offer evidence in support of their arguments.  Because the State will not be present to defend itself, it is difficult to understand how its absence will prejudice the county defendants.  This court may not issue a judgment against the State for any damages its actions may have caused Hurley.  However, any resulting prejudice to the county defendants with respect to its potential § 1983 liability is an artifact of that statute's deterrent purpose.  Any prejudice from the negligence claim may be alleviated by a state court action for contribution. The fact that the county defendants must seek this remedy in another court, or the possibility that the action may ultimately be unsuccessful, does not render the State a necessary party.  *See Pettiford v. City of Greensboro*, 556 F Supp2d 512, 522 (MDNC 2008) ("Contribution and indemnity are not legitimate bases for joinder of potential joint tortfeasors under Rule 19.").

Because the State is not required for this court to accord complete relief among the existing parties, it is not a necessary party under FRCP 19(a)(1)(A).

**b.   FRCP 19(a)(1)(B)**

The State has disclaimed all interest in this action.  As a result, the circumstances set forth in FRCP 19(a)(1)(B) do not exist.  *See Northrop Corp.*, 705 F2d at 1043 (finding that joinder under 19(a)(1)(B) is "contingent . . . upon an initial requirement that the absent party claim a legally protected interest relating to the subject matter of the action"); *see also United States v. Bowen*, 172 F3d 682, 689 (9th Cir 1999) (district court did not err in finding that joinder was not necessary where the third party was aware of the action and chose not to claim an interest).  Nevertheless, the county defendants assert that this court may ignore the plain language of FRCP 19(a)(1)(B) because no third-party defendant would ever "claim an interest" in being sued for money.  Because the State is potentially liable for some of Hurley's damages, they argue that it does have an interest and its absence would expose them to a substantial risk of incurring inconsistent obligations, requiring joinder under FRCP 19(a)(1)(B)(ii).

The court does not share the county defendants' interpretation of FRCP 19(a)(1)(B) or its view of the practical implications of following it.  The Advisory Committee Notes to the 1966 amendments instruct that FRCP 19(a)(1)(B)(ii) "recognizes the need for considering whether a party may be left, after the adjudication, in a position where a person not joined can subject him to a double or otherwise inconsistent liability."  This will not occur here.  The State disclaims any interest in the subject matter of this litigation, in part, because it has no protected interest at stake.  The only persons whose interests are at issue are those who are already parties to this case: Hurley has an interest in recovering for the injuries caused by the county defendants, and the county defendants have an interest in escaping liability.  Once this case is over, there is no risk that the State will "subject" the county defendants to double or otherwise inconsistent liability on the claims before this court.  While the county defendants may in the future have an

interest in passing on some portion of their liability to the State, that is the county defendants' interest, not the State's interest.

The county defendants primarily fear that in a subsequent state court action for contribution, the State will be able to re-litigate both the reasonableness of the amount of damages awarded and the percentage of fault assigned to the parties. Even if the State could challenge a federal jury's determination of fault and damages in a subsequent contribution action, this speculative fear is insufficient to meet the "substantial risk" requirement of FRCP 19(a)(1)(B)(ii). In order to realize the county defendants' fears, a jury in this court first must return a verdict against them. Otherwise, there is absolutely no risk of inconsistent obligations as the county defendants would have no contribution action. If the county defendants are found liable in this court, then they must still establish in a subsequent state court action for contribution that the state is "liable in tort for the same injury" to Hurley under ORS 31.800, and the state court jury would then have to discard the federal court jury's damages and fault allocations. Given the several contingencies that must occur in order to obtain contribution from the State, the county defendants have failed to show that the State's absence places them at "substantial risk" of incurring inconsistent obligations. *See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F3d 399, 412 (3rd Cir 1993) (holding that a co-obligor on a contract was not a necessary party due to a risk of inconsistent obligations under FRCP 19(a)(1)(B)(ii) even though it was possible that defendant could be left responsible for the plaintiff's entire claim if the co-obligor was found not liable in an ongoing state court action); *Pettiford*, 556 F Supp2d at 522 (rejecting the defendant's argument that it would face inconsistent obligations without the

18 - FINDINGS AND RECOMMENDATIONS

presence of immune parties because it had no right to contribution against them in a subsequent action).

The county defendants have not persuaded this court that the State's assessment of its interests is faulty or that the State's absence exposes them to a substantial risk of inconsistent obligations.  Therefore, FRCP 19(a)(1)(B) also does not apply.

        **c.**      **FRCP 19(b)**

Because the State is not a necessary party under FRCP 19(a), the court need not address the factors found in FRCP 19(b).  However, even if it were a necessary party, the court notes that multiple courts have concluded that joint tortfeasors subject to possible claims of contribution are not indispensable parties under FRCP 19(b).  *See Gardiner v. Virgin Islands Water & Power Auth.*, 145 F3d 635, 641-43 (3rd Cir 1998); *Nottingham v. Gen. Am. Comm. Corp.*, 811 F2d 873, 880-81 (5th Cir 1987); *Pasco Int'l. (London), Ltd. v. Stenograph Corp.*, 637 F2d 496, 503, 505-06 (7th Cir 1980).  The county defendants have not shown that a different result is required here. Accordingly, their motions to dismiss should be denied.

        **B.**      **Alternative Remedy**

Alternatively, the county defendants argue that they are entitled to a comparison of liability with the absent State and a corresponding reduction in any liability.  First, this court finds that Oregon's comparative fault scheme does not apply to Hurley's § 1983 claim. Assigning some percentage of fault to the absent State would violate both the compensation and deterrence policies underlying § 1983.  Second, with respect to Hurley's negligence claim, it is

premature for this court to determine what items may or may not be included in the jury instruction or on the verdict form should this case go to trial.[8]

## RECOMMENDATIONS

For the reasons discussed above, the State's Motions to Dismiss (dockets # 42 & # 45) should be GRANTED and the third-party complaints should be dismissed.  In addition, the county defendants' Motions to Dismiss and Alternative Motions (dockets # 57 & # 61) should be DENIED.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due December 21, 2009.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 3rd day of December, 2009.

s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge

_____

[8] Oregon law provides that "there shall be no comparison of fault with any person: . . . [w]ho is not subject to the jurisdiction of the court."  ORS 31.600(2)(b).  Plaintiff contends that this exception precludes a comparison of fault with respect to the State as it is not subject to this court's jurisdiction.